UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROBERT LEE MOSHER #12229-040,

    Petitioner,

      v.

UNITED STATES OF AMERICA,

    Respondent.

Case No. 1:07-cr-67
Case No. 1:07-cr-86

HONORABLE PAUL L. MALONEY

## OPINION and ORDER

**Denying the 28 U.S.C. § 2255 Petition for a Writ of Habeas Corpus;**
**Holding that All Claims Except Ineffective-Assistance are Waived;**
**Holding that All Claims Lack of Merit;**

**Declining to Issue a Certificate of Appealability**

The Civil Tax Case and Permanent Injunction:  No. 1:2003-cv-308 (W.D. Michigan).

Between 2000 and 2003, Robert Lee Mosher ("Mosher") evaded the payment of $75,633 in

federal individual income taxes that were due and payable.  *See* No. 1:2003-cv-308 (W.D. Mich.)

Presentence Investigation Report ("PSR") ¶ 32.  Although Mosher was apparently not a certified

public accountant ("CPA"), attorney, or professionally trained tax preparer, he accepted money from

several people and entities for the establishment of sham trusts and for the preparation of federal

individual income tax and business tax returns.  *See* PSR ¶ 34.  The U.S. Department of Justice

("DOJ") sought an injunction to prevent Mosher from giving tax advice, providing tax services for

compensation, or preparing federal tax returns for others, and another judge of this court issued a

preliminary injunction ("PI") in October 2003 and a permanent injunction in March 2004. *See* PSR ¶¶ 35 and 38; *see also* W.D. Mich. Case. No. 1:2003-cv-208, Doc. No. 1 (complaint and application for injunctive relief) and No. 45 (PI) and No. 59 (agreed order of permanent injunction). Mosher repeatedly violated the injunction by continuing to prepare federal tax returns and to act as an accountant and tax advisor for several people and/or entities. *See* PSR ¶ 39.

The Contempt-of-Court Prosecution: No. 1:2007-crim-67 (W.D. Michigan).

In March 2007 a federal grand jury issued a seventeen-count indictment charging Mosher with fourteen counts of criminal contempt in violation of 18 U.S.C. § 401(3), due to his refusal to obey the permanent injunction entered in the civil case; two counts of tampering with a witness, victim or informant resulting in death in violation of 18 U.S.C. § 1512(b)(1) and (c)(1); and one count of intimidating or using force against a witness, again in violation of 18 U.S.C. § 1512(b)(1); and he was arrested. *See* Doc. 1. At the arraignment in April 2007, Magistrate Judge Joseph G. Scoville released Mosher on a $25,000 unsecured appearance bond. *See* Doc. 10. After numerous ends-of-justice continuances, the final pretrial conference was scheduled for September 14, 2007; when Mosher did not appear, Senior District Judge Richard Alan Enslen issued a bench warrant, leading to Mosher's prompt arrest and revocation of his bond. *See* Doc. Nos. 38, 45-47, 53 and 55.

Following a trial from September 17-21, 2007, the jury convicted Mosher on all fourteen counts of criminal contempt but acquitted him on the three witness-tampering charges. *See* Doc. Nos. 50-51, 54, 56-57 and 59.

The Tax Prosecution: Case No. 1:2007-crim-86.

In another case in this court, No. 1:2007-crim-86, Mosher entered a written plea agreement. Mosher pled guilty to one count of obstructing the Internal Revenue Service ("IRS") and one count

of income-tax evasion in violation of 26 U.S.C. § 7212(a) and 7201, respectively, and the government agreed to dismiss the other counts and to forgo seeking an indictment for perjury which it alleged he committed during his criminal-contempt trial. *See* Doc. 34 (Plea Agreement) ¶¶ 9-10.

Consolidated Sentencing.

Mosher's criminal-contempt and tax convictions were consolidated for sentencing. In February 2008, Judge Richard Alan Enslen sentenced Mosher to concurrent terms of imprisonment of 51 months on the criminal contempt convictions (Case No. 1:2007-crim-67) and 31 months combined on the two tax convictions (Case No. 1:2007-crim-86). The terms of imprisonment were followed by 3 years of supervised release and an order to pay about $75,000 in "restitution" (unpaid federal income taxes) and a $1,600 special assessment. *See* Case No. 1:2007-crim-67, Doc. Nos. 63-64. Several days after sentencing, Mosher timely filed a notice of appeal with the Sixth Circuit, but he voluntarily dismissed the appeal in March 2008. *See* Docs. 65 and 68.

The Instant Section 2255 Motion.

In September 2008, Mosher filed a motion to vacate or set aside sentence under 28 U.S.C. § 2255; it was initially assigned Civil Case No. 1:2008-846 but was soon transferred into his criminal cases, which were then reassigned to this judge. *See* Case No. 1:2007-crim-67, Doc. Nos. 70 (motion), 71 (reassignment), and 72 (Mosher's opening brief). In December 2008, Mosher filed a supplemental brief in support of his § 2255 motion, *see* Doc. 78. After several extensions of time, the government filed an opposition brief in January 2009, and Mosher filed a reply brief in April 2009. *See* Doc. Nos. 84 and 89. In March 2009, Mosher filed a motion for summary judgment, which this court has not ordered the government to answer.

**For the reasons that follow, the court will deny Mosher's section 2255 motion; all claims**

**except ineffective assistance of counsel are waived for failure to raise them on direct appeal to the Sixth Circuit, and all claims (including ineffective assistance) patently lack merit.** The court will also deny Mosher's motion for summary judgment, which was unnecessary and which adds nothing of substance and merit to his section 2255 briefs.

**DISCUSSION**

Mosher contends that his court-appointed trial attorney, Robert Zambon, Esq., rendered constitutionally ineffective assistance of counsel, in many ways. To establish ineffective assistance of counsel, the petitioner must demonstrate that (1) counsel's performance was deficient, which means that it fell below an objective standard of reasonableness and competence and was not sound legal practice or strategy and (2) counsel's deficient performance prejudiced petitioner, resulting in an unreliable or fundamentally unfair outcome. *See McMurtry v. Berghuis*, 2009 WL 929012, *3 (W.D. Mich. Apr. 3, 2009) (Paul L. Maloney, C.J.) (citing *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984) and *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993)).

On the first prong of the *Strickland* test, the court "must 'indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" *Beeman v. Berghuis*, 2008 WL 4820500, *7 (W.D. Mich. Oct. 30, 2008) (Maloney, C.J.) (quoting *Strickland*, 466 U.S. at 689).

On the second prong of the *Strickland* test, prejudice, success "requires a showing of 'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different . . . .'" *McMurtry*, 2009 WL 929012 at *3 (quoting *Harrison v. Motley*, 478 F.3d 750, 756 (6th Cir. 2007) (Richard Allen Griffin, J.) (quoting *Strickland*, 466 U.S. at 694)). A reasonable probability is a probability sufficient to undermine confidence in the outcome. *See*

*Johnson v. Hall*, 290 F. App'x 848, 852 (6th Cir. 2008) (Griffin, J.) (citing *Strickland*, 466 U.S. at

697). Absent such a probability, "'[a]n error by counsel, even if professionally unreasonable, does

not warrant setting aside the judgment [in] a criminal proceeding [because] the error had no effect

on the judgment.'" *Ryder v. Kerns*, – F. App'x –, –, 2009 WL 1839009, *4 (6th Cir. June 24, 2009)

(p.c.) (McKeague, Griffin, S.D. Ohio D.J. Weber) (quoting *Strickland*, 466 U.S. at 691).

**Mosher first claims that his counsel was ineffective because he failed to challenge the**

**validity of the relevant federal tax or other laws.** But Mosher fails to provide any coherent, clear

explanation of how and why the relevant tax laws are invalid, let alone show that his counsel was

deficient for choosing. Mosher's first habeas claim reads as follows, in its entirety:

> Attorney attached [sic] as to their legality or enforcement under the Constitution or
> Laws of the United States.
>
> > "The result is that neither the statu[t]e nor the regulation or [sic]
> > complete without the other, and only together do they have any force.
> > In effect, therefore, the construction of one necessarily involves the
> > construction of the other . . . . When the statu[t]e and regulations are
> > so inextricably intertwined, the dismissal must be held to involve the
> > construction of the statu[t]e." *United States v. Mersky*, 361 U.S. 431,
> > 438 (1960).
> >
> > ". . . we think it is important to note that the Act[']s civil and criminal
> > penalties attach only upon violation of regulations promulgated by
> > the Secretary; if the Secretary were to do nothing, the Act itself
> > would impose no penalties on anyone." *California Bankers Assn v.
> > Shultz*, 416 U.S., 21, 26 (1974).
> >
> > Always ask to be shown the statu[t]e and regulation!! That ruling
> > was given in *Federal Crop Ins. Corp. V Merrill*, 332 U.S. 380, 384
> > (1947)[.]
>
> Attorney attacked no laws as to their legality or enforcement under the Constitution
> or Laws of the United States. Laws are made by Act of Congress. No Act of
> congress exists to make laws enforceable under the United States [sic].

Mosher's § 2255 Mot. at unnumbered p. 3. The court cannot conclude that counsel's performance

was deficient merely because he "failed" to raise arguments which are at best unclear and are not shown to be even colorable. Mosher's first claim merely strings together quotations from U.S. Supreme Court decisions and conclusory assertions, without showing how those decisions show that the tax laws, or any of the statutes of conviction, are unconstitutional or otherwise invalid. Therefore, this first claim of ineffective assistance of counsel fails.

**Mosher's second claim is that his attorney rendered ineffective assistance by failing to challenge the district court's jurisdiction to hear the case and to render a judgment of conviction and impose sentence.** First, Mosher asserts as follows:

> UNITED STATES OS [sic] AMERICA Lacked jurisdiction of subject matter to ask for the conviction in any case, and the UNITED STATES OF AMERICA under the color of authority of Due Process and color of subject matter jurisdiction seeks to force this court to order this injunction without abiding by the Rules and Regulations promoted by the Commissioner, or the statu[t]e comprising the laws for the collection and assessment of income tax for both the petitioner and his clients.

> 28 U.S.C. 1345 (28:1345) "United States as Plaintiff says:

>> "Except as otherwise provided by Act of Congress the district courts shall have original jurisdiction of all civil actions, suits as proceedings commenced by the United States, or by an agency or officer thereof expressly authorized to sue by the Act of Congress."

> THE UNITED STATES OF AMERICA commences this proceeding, which is a different name than the United States, therefore, petitioner asks the honorable judge to the UNITED STATES OF AMERICAL [sic] to commence the suit in the particular civil action or criminal action, or otherwise, to set forth the Act of Congress which created the UNITED STATES OF AMERICA to be a[n] agency or officer of the United States.

> Further, Petitioner requests the Honorable Judge to order the respondent (UNITED STATES OF AMERIC [sic]) to set fort[h] the specific Act of congress, which give[s] the UNITED STATES OF AMERICA jurisdiction to sue under 28:1345. 28:1345 only allows the United States, or any agency or any officer that is expressly authorized by and [sic] Act of Congress to sue. Therefore, unless the UNITED STATES OF AMERICA is an agency or officer of the United States then, there must be a specific Act of Congress authorizing it to sue. Petitioner requests the Honorable

> Judge to or respondent to produce the Act of Congress that Respondent relies on the [sic] give it authority to sue.

Mosher's § 2255 Mot. at unnumbered pp. 4-5 (citing decisions holding that a court has the authority to consider jurisdiction *sua sponte* and that a judgment rendered in the absence of jurisdiction must be set aside) (last ¶ break added).

If construed as an argument that the federal government lacked Article III standing to prosecute or sue Mosher, this claim is cognizable on a section 2255 petition even though Mosher never raised it on direct appeal. *See Flores-Rosales v. US*, 2009 WL 1783703, *3 (W.D. Tex. June 3, 2009) ("Petitioner argues that the 'United States' has Article III standing to prosecute him but the "United States of America,' the captioned party in the case, does not. Because petitioner raises 'the constitutional limitation of federal court jurisdiction to actual cases or controversies,' *Raines v. Byrd*, 521 U.S. 811, 818 . . . (1997), his argument may be raised in a § 2255 motion even though it was not raised on appeal.") (citing *Thor v. US*, 554 F.2d 759, 762 (5th Cir. 1977)).

In any event, this argument is specious. Mosher cites no binding or persuasive authority even remotely suggesting that any statute's use of the words "United States" was not intended to refer to "the United States of America" and this court therefore lacked jurisdiction over his criminal or civil cases. For example, Mosher identifies no statute or regulation which defines "United States" to be a different entity from "United States of America." Nor does he point to, say, any legislative history supporting the counterintuitive notion that Congress intended the shorter form to be anything more than a convenient abbreviation of the longer form.

In short, Mosher has done nothing to undermine the well-settled understanding that "United States" and "United States of America" are the same entity, and the use of one term rather than the other denotes no substantive difference in their identity or authority. *Accord US v. Wacker*, No. 98-

3267, 173 F.3d 865, 1999 WL 176171, *2 (10th Cir. Mar. 31, 1999) (denying COA from denial of habeas petition and characterizing as "ludicrous" and "fanciful" the notion that the federal government lacked authority and/or the federal court lacked jurisdiction because "the United States" and "the United States of America" are not synonymous terms); *Flores-Rosales*, 2009 WL 1783703 at *3 ("The United States of America is the same party as the United States, and an argument to the contrary is unsupported in law or common sense."); *Russell v. US*, 2008 WL 4831695 (S.D. Ill. Nov. 5, 2008) (Reagan, J.) ("These two terms are interchangeable and are commonly understood to refer to the same entity."); *US v. Wright*, 1998 WL 990588 (E.D. Cal. Dec. 29, 1998) ("[this] argument [is] patently frivolous and the motion is summarily denied."); *Csikortos v. US*, 2007 WL 4210480, *2 (W.D. Va. Nov. 27, 2007) ("[Petitioner]'s arguments have no merit. There is no substantive difference between the United States and the United States of America with regard to federal law and its application in [petitioner's] criminal case.").[1]

Mosher's second jurisdictional argument is meritless as well. Mosher writes as follows:

Tax Court operates as court of original jurisdiction, hearing all evidences and trying all issues *de novo*. *Commissioner v. R.J. Darnell, Inc* (1932, CA6) 60 F2d 82, 11 AFTR 711.

Tax court has primary jurisdiction over income tax disputes, thus, because [the] underlying issues set forth in notice of determination at issue involved income tax liability, district court lacked jurisdiction. *Morgan v. United States* (202, DC NEV) 2002-2 USTC 50600, 90 AFTR 2d 5725.

Court *sua sponte* dismissed tax payer's suit challenging 26 USCS [§] 6330 action because pursuant to : 6336 [sic] and 26 USCS [§] 7402, Court lack[ed] jurisdiction to consider taxpayer's claims: Tax Court, not district courts, had jurisdiction over

---

[1]*See also US v. Villanueva-Camacho*, 2008 WL 4368939, *3 (W.D. Ark. Sept. 24, 2008) ("'The United States of America' is often referred to as the 'United States.' Whether the country is referred to as 'United States of America', 'the United States of America', 'The United States', or 'United States', the meaning is clear and petitioner's argument is frivolous.").

such matters pursuant to 26 USCS [§] 6211(a), 26 USCS [§] 6212(a) and 26 USCS
[§] 7442, *Pirnat v. Commit* (2005 MD FLA) 96 AFTR 2d 6858[.]

Case cannot be removed from Tax Court to District court in order to have jury trial.
*Doel, CA v. Commissioner* (1974, CA2) 507 F2d 406, 74-2 USTC : 9826, 34 AFTR
2d 6230.

Mosher's § 2255 Mot. at unnumbered p 6. First and most generally, "[f]ederal courts [as opposed

to state courts] have original and exclusive jurisdiction over criminal offenses committed in violation

of the laws of the United States of America pursuant to 18 U.S.C. § 3231 . . . ." *US v. Bell*, 2008

WL 4449910, *4 (E.D. Tenn. Sept. 29, 2008) (Richard Allan Edgar, J.) (citing, *inter alia*, *US v.

Allen*, 954 F.2d 1160, 1165-66 (6th Cir. 1992) and U.S. Const. Art. I, Sec. 8).[2]

There *are* statutory provisions which confer exclusive Tax Court jurisdiction over certain

kinds of claims or appeals. *See, e.g., Dibble v. IRS*, 2008 WL 2971496, *2 (W.D. Mich. June 17,

2008) (Maloney, J.) (title 26 U.S.C. § 6330(d) gives the Tax Court exclusive jurisdiction over

appeals from collection-due-process ("CDP") hearings pursuant to 26 U.S.C. § 6320 and § 6330);

*Gillett v. US*, 233 F. Supp.2d 874, 884 (W.D. Mich. 2002) (McKeague, J.) ("To the extent plaintiff

is attempting to challenge his tax liability for the 1998 and 1999 tax years, such claims must be

dismissed for lack of jurisdiction. Such claims fall within the exclusive jurisdiction of the United

States Tax Court."). But Mosher fails to identify any statute which assigns 26 U.S.C. § 7212(a) or

26 U.S.C. § 7201 prosecutions only to the U.S. Tax Court, so he provides no basis for concluding

that this court lacked jurisdiction over his civil or criminal cases. *Cf. Kozikowski v. CIR*, 2006 WL

3298323, *4 (E.D. Mich. July 17, 2006) (Whalen, M.J.) ("In contrast to the Tax Court's exclusive

---

[2]

*Accord US v. Williams*, 2009 WL 29410, *3 (S.D. Fla. Jan.5, 2009) ("Federal district courts
have personal jurisdiction and subject matter jurisdiction over any defendant brought before [them]
on a federal indictment charging a violation of federal law.") (citing *US v. Rendon*, 354 F.3d 1320
(11th Cir. 2003)); *Gilbert v. US*, 2007 WL 2463261, *4 (W.D. Va. Aug. 29, 2007) (same).

jurisdiction in reviewing the determination of underlying tax liabilities, this Court retains jurisdiction to review the Appeals Office finding that Plaintiff filed a frivolous return in 1997.") (citing *Schultz v. US*, 2000 WL 1155203, *2 (W.D. Mich. 2005) (Miles, J.)), *R&R adopted*, 2006 WL 3298335 (E.D. Mich. Oct. 5, 2006) (Edmunds, J.).

**Accordingly, Mosher's trial counsel could not have performed deficiently by "failing to raise the US/USA argument or the Tax Court exclusive-jurisdiction argument.** *See, e.g., Holmes v. US*, 281 F. App'x 475, 482 (6th Cir. 2008) (Siler, Cole, E.D. Mich. D.J. Cleland) ("Any motion to suppress based upon the 'pretextual' traffic stop would have been frivolous. * * * In rejecting Holmes' § 2255 motion below, the district court noted '[i]n fact, Officer Conkey testified at the suppression hearing . . . that while he was following petitioner, and before the stop, he verified through a records check that petitioner's license was in fact revoked. * * * Trial counsel was not ineffective for failing to file a motion to suppress that would have been meritless."); *James v. Lafler*, 2009 WL 1362969, *7 (W.D. Mich. May 11, 2009) (Maloney, C.J.) ("failure to make a meritless motion is not ineffective assistance") (citing, *inter alia, Chegwidden v. Kapture*, 92 F. App'x 309, 311 (6th Cir. 2004) (p.c.) (Cole, Gilman, N.D. Cal. D.J. Schwarzer)) and *Beeman v. Berghuis*, 2008 WL 4820500, *9 (W.D. Mich. Oct. 30, 2008) ("Counsel's failure to make a meritless objection does not constitute ineffective assistance of counsel.") (citing, *inter alia, Turnpaugh v. Lecreaux*, No. 96-1299, 107 F.3d 871, 1997 WL 49959 (6th Cir. Feb. 6, 1997) (p.c.) (Contie, Ryan, Boggs)).

**Mosher's third claim** begins by citing a U.S. Supreme Court decision for the unremarkable proposition that there is an indisputable right to conduct a lawful business and earn profits thereby, yet he does not explain how this casts doubt on his convictions or sentence, let alone show how his counsel was deficient for failing to use this principle on his behalf. *See* Mosher's § 2255 Motion

at unnumbered p. 6.

Mosher goes on to cite an Arkansas state-court decision for the proposition that "[t]he legislature has no power to declare as a privilege and tax for revenue purposes occupations that are "common rights."  *See id.* at unnumbered p. 7 (citation omitted).  In matters of federal law – constitutional or otherwise – however, the decisions of state courts have no precedential force in the federal courts.  *See First American Title Co. v. DeVaugh*, 480 F.3d 438, 455 (6th Cir. 2007) (Richard Allen Griffin, J.) ("A state court's opinion on an issue of federal law . . . is entitled to no deference whatsoever.") (citing, *inter alia*, *US v. Miami Univ.*, 294 F.3d 797, 811 (6th Cir. 2002)), *reh'g & reh'g en banc denied* (6th Cir. July 12, 2007);[3] *see, e.g., Wayne v. Village of Sebring*, 36 F.3d 517, 526 (6th Cir. 1994) ("We reject the state court of appeals' interpretation of federal law.").  Moreover, even if Mosher had identified binding federal precedent for the proposition enunciated by the Arkansas state-court decision, he fails to elaborate on how that proposition casts doubt on the injunction issued in his civil case or on his plea conviction, non-plea convictions, or sentence.

Mosher continues his third claim by citing a host of decisions, mostly from the U.S. Supreme Court, for the proposition that the individual has a right "to engage in any of the common occupations of life . . . and generally to enjoy those privileges long recognized at common law as essential to the orderly pursuit of happiness by free men."  Mosher's § 2255 Motion at unnumbered

---

[3]

*Accord Wojchowski v. Daines*, 498 F.3d 99, 110 n.9 (**2d Cir.** 2007) ("We are, of course, not bound by a state court's interpretation of federal law.") (citing, *inter alia*, *US v. Montana*, 134 F.2d 194, 196 (9th Cir. 1943));

*Hawkman v. Parratt*, 661 F.2d 1161, 1166 (**8th Cir.** 1981);

*Barton v. County of Denver*, 2007 WL 3104909, *1 (**10th Cir.** Oct. 24, 2007) ("[T]he *stare decisis* effect of a state court decision interpreting federal law is limited to the courts of that state; that doctrine cannot bind a federal court to follow a state court's interpretation of federal law . . . .").

p. 7 (citations omitted). Mosher also cites a U.S. Supreme Court decision for the proposition that "[a] state may not impose a charge for the enjoyment of a right granted by the Federal Constitution." *See* Mosher's § 2255 Motion at unnumbered p. 7 (citation omitted). Mosher utterly fails, however, to identify any precedent suggesting that these rights were violated by his prosecution, conviction, or sentencing for the instant offenses, let alone to show that his trial counsel performed deficiently by failing to raise these principles and apply them in some unspecified way on his behalf.

Mosher concludes his third claim by reiterating the conclusory assertion, supported by no precedent, that the district court lacked jurisdiction to issue the permanent injunction regarding his tax-preparation and tax-counseling activities (which he then violated), and by reiterating his specious argument that the United States of America is not a proper party plaintiff because the jurisdictional and other relevant statutes technically refer only to "the United States." *See* Mosher's § 2255 Mot. at unnumbered p. 8.

**Mosher's fourth claim contends that trial counsel performed deficiently by failing to move to suppress certain evidence which he contends was seized due to an unlawful investigatory stop.** *See* Mosher's § 2255 Mot. at unnumbered p. 8 (citing *Brown v. US*, 656 F.2d 361 (8th Cir. 1981)). But Mosher completely fails to explain why any stop, search or seizure in his cases was unconstitutional. Instead, he simply cites a D.C. Circuit decision where a court vacated a sentence due to defense counsel's deliberate failure to honor defendant's express requests to act to suppress evidence obtained by an arguably unlawful search, and a Tenth Circuit decision allegedly standing for the proposition that section 2255 provides a remedy where evidence was unconstitutionally seized. *See* Mosher's § 2255 Motion at unnumbered p. 9 (citations omitted). He concludes his fourth claim by citing a D.C. Circuit decision which he characterizes as holding

-12-

"[w]here evidence against accused was improperly admitted in violation of petitioner's constitutional right, witnesses, witness who would have established his innocence were not called by counsel although accused was innocent." Mosher's § 2255 Motion at unnumbered p. 9 (citation omitted). He then asserts, with no explanation whatsoever, "Witness [sic] if they were not intimidated by the fraud of the Internal Revenue Service Agents would have proved petitioner['']s innocence's [sic]." Mosher's § 2255 Motion at unnumbered p. 9. In short, Mosher's fourth claim is devoid of substance or support. It does not even begin to state a claim for deficient performance by counsel, let alone constitutionally ineffective assistance of counsel.

**In its entirety, Mosher's fifth claim reads as follows:**

CONVICTION OBTAINED BY A VIOLATION OF PRIVILEGE AGAINST SELF-INCRIMINATION.

Compliance with federal constitutional requirements that guilty pleas be made voluntar[il]y and with understanding. Ineffective assistance of counsel, misrepresentation or failure to advi[s]e. 90 ALR Fed 748[].

Because counsel failed to advi[s]e client about going to sportsman club for a "Living the Dream" banquet gave prosecutors leverage to force and intimidate petitioner for plea. Counsel stated that if I didn't plea[d] guilty to the charge [of felon in possession of a firearm] the government was offering "I WOULD DIE IN PRISON." Counsel worked with government to get plea.

Mosher's § 2255 Mot. at unnumbered pp. 9-10. Mosher is referring to a banquet – presumably a fundraising event for a group protecting Second Amendment rights – where he handled and fired a firearm. The federal government learned that Mosher had handled the firearm and successfully prosecuted him for being a previously convicted felon in possession of a firearm. Mosher never actually alleges that his counsel knew that he planned to attend the event, let alone handle a firearm at the event, so his claim could be rejected on that basis alone. In any event, it was Mosher's own deliberate decision to possess a firearm at the event, not any erroneous advice or failure to give

advice on the part of his counsel, which created the probable cause needed to arrest and charge Mosher for the felon-in-possession offense. Moreover, counsel was not Mosher's personal lawyer, with the responsibility of advising him in all aspects of his life; he was appointed by the court only to represent Mosher in specific proceedings.

Next, Mosher's former counsel presents an affidavit explaining that he never told Mosher he would die in prison if he did not plead guilty, but rather it was Mosher who had told counsel that he feared he would die from lack of adequate medical care in prison because of his numerous medical conditions. *See* Gov's Opp at 7-8 (citing Counsel Zambon's Affidavit ¶ 12). Moreover, even assuming *arguendo* that counsel warned Mosher that he could "die in prison" if he did not accept a plea deal, Mosher has not shown that such advice would constitute deficient performance. For example, if he were convicted at trial and the government successfully urged *consecutive* sentences for even some of the convictions (rather than the concurrent sentences he received on the criminal-contempt and tax charges), it is reasonable to believe that the resultant term of imprisonment would exceed the remainder of his natural life.

The third part of Mosher's fifth claim fails as well. Contrary to Mosher's accusation that his counsel somehow improperly worked with the prosecution to "get" him to plead and did not adequately advise him of the potential consequences of pleading guilty, Mosher's counsel submits an affidavit stating that he "fully advised Mosher of the advantages and disadvantages of a plea versus trial as well as the possible penalties, including the issue of possible consecutive sentences." Gov's Opp at 8 (citing Zambon Aff. ¶ 14). Without contradiction by Mosher, the government presents this summary of the plea colloquy:

THE COURT:        Has anyone threatened you or coerced you to get you to plead guilty?

-14-

| | |
|---|---|
| MOSHER: | No. |
| THE COURT: | Has anyone made any promises to you or told you that they know what Judge Bell's sentence is going to be? |
| MOSHER: | No. |
| THE COURT: | Have you had a sufficient amount of time to think about this matter and contemplate it such that your plea can be said by you to be freely and voluntarily made? |
| MOSHER: | Yes, Your Honor. |

Gov's Opp at 8 (citing Plea Hearing Transcript at 8). "'Solemn declarations in open court ' made by a criminal defendant during a plea hearing 'carry a strong presumption of verity'", *Bradley v. Palmer*, 2007 WL 2318773, *10 (W.D. Mich. Aug. 9, 2007) (quoting *Blackledge v. Allison*, 431 U.S. 63, 74 (1977), so "a criminal defendant[']s statement on the record 'that he had not been coerced or threatened into pleading guilty . . . is strong evidence of the voluntariness of his plea'", *Bradley*, 2007 WL 2318773 at *10 (quoting *US v. DeFusco*, 949 F.2d 114, 119 (4ᵗʰ Cir. 1991)). *Accord US v. Collado-Gomez*, 674 F. Supp. 426, 428 (E.D.N.Y. 1987), *aff'd*, 854 F.2d 1315 (2d Cir. 1988) (statements made during a plea colloquy are conclusive absent credible evidence to the contrary).

As a sister court aptly explained in a similar situation,

The testimony is clear – that trial counsel believed petitioner could face consecutive federal sentences, and that under the facts presented, counsel believed petitioner would be so sentenced. The Magistrate Judge's summary of this testimony – that *the trial attorney "believed the federal courts could impose a consecutive sentence to Smith's state sentence and that he forcefully and frequently advised Smith that if he did not resolve his state case by negotiation, he believed Smith would die in prison"*, is accurate.

Notwithstanding possible distinctions between counsel's belief that petitioner could face consecutive federal sentences and counsel's belief that petitioner would be so sentenced, *the advice petitioner received was well within the applicable objective standard of reasonableness required of counsel . . . .*

*Smith v. Hall*, 2009 WL 995019, *2 (D. Or. Apr. 9, 2009) (underlining indicates emphasis in original, italics indicates emphasis added by this court); *see also US v. Fiorini*, 2008 WL 2225721, *2 (S.D. Ohio May 27, 2008) (dismissing § 2255 motion, and noting that Sixth Circuit had rejected ineffective-assistance claim on direct appeal; "On . . . , the date that trial was set, [defense counsel] advised the Court that he was prepared to proceed to trial although he had strongly encouraged Defendant to accept a plea agreement which would have resulted in a 48-month sentence. [Defense counsel] told the Court that although he might not have added up the hundreds of years of a potential maximum sentence, he told Defendant that he would likely die in prison if convicted after trial, given his own age of 55 and the vulnerability of many of his victims.  After a recess of about 1.5 hours, the defendant pled guilty . . . .") (record citations omitted); *Jordan v. US*, 2006 WL 1479513, *4-5 (E.D. Mo. May 24, 2006) (Limbaugh, J.) (denying § 2255 motion and stating, "In the plea agreement, the government agreed to file a sentencing enhancement as to only one of movant's two prior felony drug convictions.  Had the government filed an enhancement on both . . . , movant would have been subjected to a mandatory minimum sentence of life in prison.  Assuming *arguendo* that movant's counsel did tell him he could 'die in jail' if he went to trial, there was a basis for counsel's concern.  Conceivably counsel could have been ineffective had he *not* pointed out this possibility[;] although his technique may have been considered harsh, [it was] not inaccurate.").[4]

---

*Cf. Franks v. Lindamood*, 2007 WL 3046357 (M.D. Tenn. Oct. 15, 2007) (dismissing § 2254 habeas petition which claimed ineffective assistance of trial counsel) (noting that state court had denied state post-conviction motion notwithstanding petitioner's essentially uncontradicted testimony that his trial counsel advised him, at their only meeting prior to the plea hearing, "'They're offering you 15 years at 100 percent and that's it.  And if I was you, I'd take it or you might die in prison' because Petitioner's maximum exposure was 60 years.");

    *Dillingham v. Lampert*, 2006 WL 1142863, *3 (D. Or. Apr. 20, 2006) (denying § 2255 motion and noting with approval the state habeas court's earlier holding that petitioner had not been

In short, Mosher has not shown that his counsel rendered ineffective assistance even if counsel conveyed the "die in prison" warning, nor has he shown (utterly contrary to the plea colloquy) that this warning or anything else rendered his plea other than knowing, voluntary and intelligent.

**In its entirety, Mosher's sixth claim reads as follows:**

DENIAL OF EFFECTIVE ASSISTANCE OF COUNSEL.

Attorney would not file any motions. Court lacked jurisdiction causing attorney to be silent [sic].

> "Sixth Amendment to Federal Constitution, guaranteeing accused in criminal prosecution" Assistance of Counsel "for his defense, means effective assistance, as distinguished from bad faith, sham, mere pretense or want o[f] opportunity for conferences and preparations." Fed. R. Crim P 44; 18 U.S.C.A. 3006 A; *Gideon V Wainwright*, 372 U.S. 3365 . . . ; *Geders v. US* 80, 96 S.Ct. 1330 . . . . – <u>Black Law Dictionary 6th Ed (Emphasis added).</u>

Under 28 USCS [§] 2255, requirements that otherwise procedurally barred petition demonstrates cause and [prejudice also applies to ineffective assistance of counsel raised for the first time on p[o]st[-]conviction [petition attacking sentence, so long as defendant. [sic] *Valasquez V. United States* (1998, SD NY), 24 F Sup Ct 320.

When defendant is represented by counsel, in order to establish Sixth Amendment violation it must be shown that incompetency of counsel was so obvious that reasonable attentive official of State should have been aware of it and could have taken correctness [sic] of his counsel at trial where counsel had failed to object to indictment to its introduction into evidence [sic]. *United States v. Guerra* (1979,

---

denied effective assistance by his trial counsel's allegedly "pressur[ing] him to plead to the charges. Petitioner's sister testified that [defense counsel] told her that if petitioner went to trial, he 'would never see the light of day' and would 'die in prison.' Petitioner had been charged with 37 counts [of sodomy and unlawful sexual penetration]. [T]he evidence was compelling. Petitioner has failed to show that his trial counsel's advice to plead no contest to three charges in exchange for having the remainder of the charges dropped was not [up to] the highest of professional standards. At sentencing, petitioner was given opportunity by the court to change his mind, ask questions and reject the plea agreement. Petitioner indicated that [defense counsel] was an 'excellent attorney' and that he accepted the agreement entirely."), *aff'd*, 231 F. App'x 968 (9th Cir. 2007).

CA5 Tex) 588 F2d 519.

Petitioner's argument that attorney denied effective counsel because of attorney's knowing failure to present exculpatory evidence could appro[priately be raised in proceeding under 28 USCS [§] 2255. *United States v. Thundersheild* (1973, CA8 SD) 478 F2d 241, Cert den (1973) 414 US 851 . . . .

Attorney knew court lacked jurisdiction because he told petitioner he would not fight jurisdiction. Attorney knew "Search [W]Arrant" was unconstitutional because court was not constitutional [sic].

Attorney would not file:

1.      Letter filed Jun 5, 2007 Enc 2
                a.     would not fight law
                b.     search warrant
                c.     Jurisdiction

2.      Jurisdictional challenge - Enc 3

3.      Constitution Compliant Law - Enc 4

4.      Motion to Recues [sic] Judge Easlea [Enslen?] - Enc 5

5.      Would not file all or return letter – filed Sept 17, 2007 returned 10-2-07 Encl 7

6[.]      Would not attach order that was to be served personally – Order – Enc 8

7[.]      Order to revoke bond – Enc 9

8[.]      Letter to judge by wife.  She had to mail directly – 24-08 Encl 10

9[.]      Notice of intent to withdraw appeal – Defendant name different than signature.  Enc 11[.] Zambow [sic] served improper document or original. Enc 11[.]

Petitioner tried to remove ineffective counsel:

      1.      May 21 – Enc 12

      2.      June 14, 2007 – Enc 13

      3.      Court of Appeals 7/11/07 – Enc 14

4.      Request for reconsideration – 9/6/07 Enc 15

5.      Order – 9/11/07 Enc 16
        Order rejecting pleadings – 9/18/07 Enc 17

> Attorney's only point in representation was through fraud, collusion and deceit.
> Court got petitioner incarcerated causing petition[er] to be punished maliciously
> [not] only by jailed [sic] but [by] giving the prosecution the ability to put in the paper
> and the internet that another "tax protestor" was jailed. Since being incarcerated
> wife to petition[er] has had many more health problem[s] due to stress. The stress
> on petitioner has been hard because of fraud and deceit of the Justice System.

Mosher's § 2255 Mot. at unnumbered pp. 10-12. Mosher provides inadequate details to explain how

he believes his trial counsel performed deficiently with respect to most of the documents and issues

which he lists in this claim. His argument that counsel was ineffective because he failed to

challenge the court's jurisdiction was discussed and rejected above. Mosher's comments about the

stress and health problems which he and his wife have suffered as a result of his convictions likewise

provide no basis for this court to disturb his convictions or sentences on habeas review. His

speculation about the motivations of the prosecution, or the government's desire to publicize the

imprisonment of a "tax protestor", are irrelevant to the permissible grounds for federal habeas relief.

        Finally, to the extent that a coherent claim can be drawn from Mosher's comment "Notice

of intent to withdraw appeal – Defendant name different than signature. Enc 11[.] Zambow [sic]

served improper document or original. Enc 11[.]", it lacks merit. Defense counsel Zambon affies

that Mosher freely and voluntarily signed a notice of intent to withdraw his appeal in W.D. Mich.

Case No. 1:2007-crim-67; he was apparently eager to begin suing Judge Enslen, his counsel, and

others, and did not wish to do so while an appeal was pending. *See* Gov's Opp to § 2255 Mot. at

9 (citing Zambon Aff. ¶¶ 18 & 21). It is true that the motion to withdraw Mosher's appeal

inadvertently referred to him at one point as "Robert Allen Mosher" rather than his correct name

"Robert Lee Mosher", but the signature lists his correct middle name and he signed his correct middle name. The court finds that the motion to withdraw the appeal to the Sixth Circuit was valid, and that Zambon did not file the motion in someone else's name.

Moreover, as the government points out, *see* Gov's Opp at 9, Zambon advised Mosher that there was limited value to an appeal in W.D. Mich. Case No. 1:2007-crim-67 because even if those convictions were vacated, he was still required to serve a concurrent sentence in W.D. Mich. Case No. 1:2007-crim-86, which latter sentence the plea agreement waived his right to appeal. At most the trial court may have erred in failing to ask Mosher, at the Rule 11 colloquy, specifically about the waiver of *appellate* rights. But as the government cogently reasons, Zambon's performance should not be found deficient for failing to try to take advantage of this omission, as

> [a] contrary conclusion would require a defense attorney to exploit the court's oversight and make a bad faith argument that the waiver provision was not knowingly and voluntarily entered into, when in fact the parties negotiated a waiver in good faith, and understood the waiver provision to be valid. The law should not require such conduct.

Gov's Opp at 10.


**In its entirety, Mosher's seventh claim reads as follows:**

ATTORNEY MISREPRESENTED CANCELLING APPEAL.

> Attorney stated that it would be foolish to appeal 0067 [Case No. 1:2007-crim-67 (W.D. Mich.)] because petitioner was found guilty. Petitioner was found not guilty of breaking the law when no law exists. Attorney misrepresented the court again th[r]ou[gh] his deceit. Attorney filed motion to withdraw the appeal using someone else's name than petitioner. Enclosed 11[.]

Mosher's § 2255 Mot. at unnumbered p. 12. This claim lacks merit. The court has already explained why Mosher has failed to show the invalidity of the statutes of conviction

(notwithstanding Mosher's assertion that "no law exists"), and why Mosher's trial counsel cannot reasonably be seen as filing the motion to withdraw appeal on someone else's behalf due to an isolated typographical error.

**Mosher's eighth claim** is a hodge-podge of issues and arguments sometimes not directly related to each other, and all have either been addressed already or are not sufficiently supported to merit analysis, including his assertion that unremarkable, customary courtroom procedures and decorum – such as the transfer of the case from Grand Rapids to Kalamazoo – somehow violated due process or evinced reversible judicial bias by Judge Bell or Judge Enslen. The claim reads, in pertinent part,

> COURT WAS PREJUDICE[D] AGAINST PETITIONER. Sworn statements by IRS Agents are not sufficient to establish that petitioner has been afforded Due Process, and petitioner still asserts that the UNITED STATES OF AMERICA has no right to personal jurisdiction, summary judgment as a matter of law [sic].
>
> Although the UNITED STATES OF AMERICA claims authority to act, this court [sic] "lacked subject matter jurisdiction, lack person[al] jurisdiction or acted in a manner INCONSISTENT with Due Process of law." *Eckel v. MacNeal* 628 N.E.2d 741 (M. App Dist. 1993) [sic]
>
> Judge Robert Holmes told me to stop after I put into the record that "I accepted his oath of office" [sic]. I was told to stop and not talk again. Judge Robert Holmes Bell was acting against the Constitution in this instance. He was acting in his personal capacity and not allowing due process. Then petitioner was told that the case was transferred to Judge Richard Alan Enslen in Kalamazoo.
>
> Judge Richard Alan Enslen (Enslen) stated on the record that petitioner could not have any objections while in his court. Enslen stated that attorney was my representative and he was allowed to speak. Enslen implied that if petitioner objected to[o] strongly that petitioner would have been removed from court and trial would have continued. Enslen accepted evidence proving petitioner was not informed of next court date, but disregarded proof and revoke bond. Enslen played along with improper jurisdiction, so he was also working in his personal capacity.
>
> The Honorable Robert Holmes Bell (Bell) heard petitioner['s] case without investigating the fraud place[d] on the record. Petition filed on July 20, 2005

"ANSWER TO MEMORANDUM OPINION AND ORDER.["]  Enclose 18.  On July 11, 2005 Bell ordered motions void judgment [sic] stating that the motion did not contain ["]any supporting factional [sic] assertions or any relevant legal authority[.]" Petitioner respectfully demands a written answer if not law please sight [sic, cite] reason why it is not [sic].  Bell never answered [sic] motion proving fraud against his Oath and the Constitution.

> "Silence can only be equated with fraud where there is a legal or moral duty to speak, or where an inquiry left unanswered would be intentionally misleading . . . we cannot condone this shocking behavior by the IRS.  Our system is based on the good faith of the taxpayer and the taxpayers should be able to expect the same from the government in its enforcement and collection authorities."  *U.S. v. Tweel*, 550 F.3d 297, 299.  *See also US v. Prudden*, 424 F.2d 1021, 1032; *Carmine V. Bowen*, 64 A 932[.]

Mosher's § 2255 Mot. at 13-14.  In addition to the defects in this claim mentioned above, Mosher fails to cite any precedent suggesting that Judge Bell committed legal error, let alone evinced bias, by rejecting or denying motions that lacked factual allegations, development, and citations to legal authority.  Mosher concludes his eighth claim with further conclusory assertions, unsupported by precedent, that the judges in his cases in this court were biased against him and violated their oaths of office, *perhaps* that the government (in some unspecified way) withheld exculpatory evidence (it is unclear what Mosher is arguing here), that the government in some unspecified way concealed "the fact that under the constitution taxes are voluntary", and yet again that the court lacked subject matter jurisdiction.

**Mosher's ninth claim reiterates arguments that he raised in previous claims earlier in this same petition, which the court has rejected above.**  *See* Mosher's § 2255 Mot. at 16-17 (counsel should not have told Mosher that he might die in prison if he did not accept the plea offer, rendering his plea involuntary and coerced, he would not have pleaded guilty if he had been properly advised and not coerced, the attorney was ineffective because he failed to challenge jurisdiction, the

attorney deceived him and colluded with the government to get him convicted, and the trial was a "show" with a foregone conclusion).

**In Mosher's summary of his petition, he appears to assert a completely unsupported new claim** that he could not be prosecuted because he was a citizen of the State of Michigan only and not a citizen of "THE UNITED STATES (as statutorily defined in title 26 U.S.C.)." But he makes no effort to develop this argument or provide any precedent to support it. *See* Mosher's § 2255 Mot. at 17-18.

**Finally, Mosher's putative reply to the government's response to his petition does nothing** to squarely address, let alone convincingly refute, the arguments and the legal authority mustered in that response. He attempts to assert a host of new arguments that he either did not raise or did not attempt to develop and support in his petition (e.g., the novel argument that the U.S. Department of the IRS lacked legitimate authority to investigate and charge him because it is an agency of "the DEPARTMENT OF TREASURY, PUERTO RICO", *see* Mosher's Reply at 3; the claim that search warrant was invalid, *see id.* at 4-5; that handwriting analysis proved that a signature on a document (it is not entirely clear *which* document) was not his signature, *see id.* at 5; and that trial counsel allegedly assured him that he would be sentenced to home confinement rather than imprisonment, *see id.* at 6; and, *inter alia*, that he should not have been subject to 17 assessments of $100 but only to one, *see id.* at 9).

## CERTIFICATE OF APPEALABILITY

Under 28 U.S.C. § 2253(c)(2), "'the court should grant a COA for an issue raised in a § 2254 [or § 2255] petition only if the petitioner has made a substantial showing of the denial of a federal

constitutional right.'" *Wardlaw v. Howes*, 575 F. Supp.2d 820, 821 (W.D. Mich. 2008) (Maloney, C.J.) (quoting *Harbison v. Bell*, 503 F.3d 566, 568 (6th Cir. 2007), *cert. denied*, – U.S. –, 128 S.Ct. 1479, *cert. granted o.g.*, – U.S. –, 128 S.Ct. 2959 (2008)). To satisfy this standard, "the petitioner must demonstrate that reasonable jurists could disagree with the district court's resolution of his constitutional claims or that jurists could conclude that the issues raised are 'adequate to deserve further review.'" *Wardlaw*, 575 F. Supp.2d at 821(quoting *Harbison*, 503 F.3d at 569 (citing *Banks v. Dretke*, 540 U.S. 668, 705 (2004)). *See also Butz v. Berghuis*, 2009 WL 33462, *6 (W.D. Mich. Jan. 5, 2009) (Maloney, C.J.) (quoting *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) and *Henley v. Bell*, 308 F. App'x 989, 990 (6th Cir.) (p.c.) (Siler, Cole, Cook) (citing *Banks*, 540 U.S. at 674), *cert. denied*, – U.S. –, 129 S.Ct. 1057 (2009)). The district court must either issue a COA indicating which issues satisfy this standard, or provide reasons why such a certificate should not issue. *Fields v. Quigley*, 2008 WL 4562211, *7 (W.D. Mich. Oct. 8, 2008) (Maloney, C.J.) (citing FED. R. APP. 22(b) and 28 U.S.C. § 2253(c)(3)).

The U.S. Supreme Court disapproves of blanket denials of certificates of appealability. *Colwell v. McKee*, 2009 WL 125223, *3 (W.D. Mich. Jan. 16, 2009) (Maloney, C.J.) (citing *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2001)). Rather, this court "must 'engage in a reasoned assessment of each claim' to determine whether a certificate is warranted." *Oatis v. Caruso*, 2009 WL 80347, *4 (W.D. Mich. Jan. 8, 2009) (Maloney, C.J.) (citing *Murphy*, 263 F.3d at 467).

The petitioner need not show, however, that he is likely to succeed on appeal. *See Wardlaw*, 575 F. Supp.2d at 821 (citing *Miller-El*, 537 U.S. at 337); *Workman v. Bell*, 484 F.3d 837, 842 n.3 (6th Cir. 2007) (distinguishing standard for stay pending appeal, which focuses on appellant's

likelihood of success on the merits, from the COA standard, which requires a lesser showing), *reh'g & reh'g en banc denied* (6th Cir. May 7, 2007). "'[I]t is consistent with § 2253 that a certificate of appealability will issue in some instances where there is no certainty of ultimate relief.'" *Wardlaw*, 575 F. Supp.2d at 821 (quoting *Walker v. Carlton*, 114 F. App'x 687, 690 (6th Cir. 2004) (quoting *Miller-El*, 537 U.S. at 337)).

Nonetheless, petitioner Mosher does not meet the standard for a COA, because other reasonable jurists would not find debateable or wrong the determination that (1) with the exception of the ineffective-assistance of counsel, he is barred from asserting claims or raising issues which he failed to raise on direct appeal; (2) all his claims lack merit; and (3) he may not raise claims or issues for the first time in his reply that he failed to raise in his main brief or supplemental brief supporting the petition. Nor has Mosher presented any issues adequate to deserve further review.

## ORDER

The 28.U.S.C. § 2255 Motion to vacate or correct sentence [document #47] is **DENIED**.

The petitioner's motion for summary judgment [document # 63] is **DENIED**.

This is a final order, but the court **DECLINES** to issue a certificate of appealability.[5]

---

[5]

This court's refusal to issue a COA is <u>not</u> appealable. *Torres v. Davis*, 2009 WL 613550, *4 n.5 (W.D. Mich. Mar. 9, 2009) (Maloney, C.J.) (citing*, inter alia, Sims v. US*, 244 F.3d 509, 509 (6th Cir. 2001) ("[W]e hold that an order denying a certificate of appealability is not appealable."), *followed by Crowley v. Renico*, 81 F. App'x 36, 37 (6th Cir. 2003) and *US v. Badru*, 2008 WL 1683113, *1 (D.C. Cir. July 27, 2004) (p.c.) (Rogers, Tatel, John Roberts)). The petitioner remains free to seek a COA from the U.S. Court of Appeals for the Sixth Circuit under FED. R. APP. P. 22.

**IT IS SO ORDERED** on this  7th  day of July 2009.

/s/ Paul L. Maloney
Honorable  Paul L. Maloney
Chief United States District Judge